IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                            Case No. 2:19-cr-17

Felix Cabrera-Acuna

OPINION AND ORDER

    Defendant pleaded guilty to the offense of re-entry of a removed alien after an aggravated felony conviction in violation of 8 U.S.C. §1326(a) and (b)(2). Defendant was sentenced to a term of incarceration of 48 months, to be followed by a 3-year term of supervised release. According to the Bureau of Prisons ("BOP"), defendant's projected release date is June 11, 2022. See www.bop.gov/inmateloc/ (last visited May 26, 2021). He is an illegal alien and will go into the custody of Immigration and Customs Enforcement ("ICE") after serving his term of incarceration.

    On December 18, 2020, defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. Doc. 36. Defendant argued that compassionate release was warranted due to his health concerns and the risk of serious illness from COVID-19 due to his medical conditions and Hispanic origin. Counsel was appointed to represent the defendant. On May 4, 2021, counsel filed a supplement to the motion, arguing that defendant's health problems, the risk posed by COVID-19, and the fact that he will be detained in ICE custody while awaiting removal warrant his early release. Doc. 44.

    The government responded on May 25, 2021. Doc. 49. The government did not contest that defendant had exhausted his

administrative remedies as required under §3582(c)(1)(A). However, the government opposed the motion, arguing that defendant failed to show an extraordinary reason for compassionate release, and that the motion should be denied based on the factors in 18 U.S.C. §3553(a).

I. Standards for Compassionate Release

Under §3582(c)(1)(A)(i), the court can reduce a sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

Although §3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" found in the United States Sentencing Guidelines, §1B1.13 and Application Note 1, the Sixth Circuit has held that the policy statements do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111. Therefore, the court will not base its decision on whether defendant's health problems

2

satisfy the policy statements.

II. Reasons for Compassionate Release

Defendant alleges that his medical conditions warrant his release. Defendant, who is 36 years old, notes that he has Type 2 diabetes, hypertension, and hyperlipidemia. Defendant did not report any of these conditions to the probation officer who prepared the presentence investigation report ("PSR"). However, in support of his motion, defendant has submitted his treatment records from the North Lake Correctional Institution, a privately run prison within the BOP system, where he is incarcerated.

Contrary to defendant's claim that he has received deficient medical services, the extensive medical records attached to the motion show an extraordinary level of medical care, and reveal that defendant's conditions, including his diabetes, are carefully monitored and treated. For example, a record dated December 16, 2020, included a list of medications prescribed for the defendant. Doc. 36, pp. 57-60. There are numerous pages showing lab results and notations concerning body temperature, pulse rates, blood pressure, respiratory notes, weight and glucose levels recorded on multiple dates during the time defendant has been at the institution. Doc. 36, pp. 61-94; Doc. 36-1, pp. 1-49. A record dated September 25, 2020, indicated that the control of defendant's hypertension and hyperlipidemia with medication was good. Doc. 36-2, p. 96. That same record indicted that control of defendant's diabetes was poor. However, another record includes a note by a doctor asking the nurse to tell defendant not to buy honey buns from the commissary (defendant responded to the nurse that he liked honey buns and would continue to buy them). Doc. 36-2, p. 63.

3

Thus, it appears that defendant's own dietary choices may be a factor here. The records show that defendant's glucose levels are routinely monitored and that defendant has been consistently treated with insulin. The records also include notes from an annual foot evaluation (feet being a common area of concern for diabetics), which revealed no problems other than ill-fitting shoes; defendant was referred for a shoe fitting. Doc. 36-2, pp. 91, 93.

An individualized needs plan dated November 13, 2020, indicated that defendant was rated as CARE1, healthy or simple chronic care, and that he was cleared for food service. Doc. 36, p. 41. In response to defendant's May 13, 2020, request for compassionate release, the warden stated on June 15, 2020, that defendant's medical conditions were properly maintained in the institutional setting, and that defendant had not said where he would obtain medical treatment if he is released. Doc. 36, p. 37. The court finds that the evidence submitted by defendant fails to show that his medical conditions constitute an extraordinary reason for his early release.

Defendant also argues that his Hispanic ethnicity and medical conditions, viewed in light of the risks of COVID-19, are sufficient to show an extraordinary reason for a sentence reduction. According to the Centers for Disease Control ("CDC"), some racial and ethnic minority groups have been disproportionately affected by COVID-19 due to factors such as poverty, discrimination, lack of access to health care, type of employment, and housing. <u>See</u> https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited April 26, 2021). There is no indication that any of these factors

4

would make defendant any more susceptible than non-minority inmates to COVID-19 in a federal institution, or put him in a less favorable position for obtaining medical treatment or other services. In fact, from the records, it appears that he has received excellent medical treatment while in the institution.

Defendant also has Type 2 diabetes, hypertension and hyperlipidemia. According to the CDC, persons with Type 2 diabetes and pulmonary hypertension (high blood pressure in the lungs) have an increased risk of serious illness from COVID-19, and persons with hypertension may be at increased risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 24, 2021). It is not clear what form of hypertension defendant has. Hyperlipidemia (high cholesterol) is not a condition recognized by the CDC as posing an increased risk. As indicated above, defendant's medical conditions are being carefully monitored and treated with medication.

The medical records indicate that defendant tested positive for COVID-19 on May 18, 2020. Doc. 36-1, p. 79. Defendant was admitted to the institution's infirmary on May 26, 2020, where he was treated for pneumonia with medication and oxygen. By June 1, 2020, he had no respiratory problems, and he was discharged from the infirmary. Doc. 36-2, pp. 54-55. There is no evidence that defendant has any current symptoms stemming from his infection by COVID-19. Defendant raises concerns about the possibility of re-infection. However, as defendant acknowledges, the CDC has indicated that it is uncertain at this time whether persons who have had COVID-19 can be re-infected. The government was informed by the BOP that defendant received a COVID-19 vaccine on May 10,

2021. Doc. 49, p. 2.

The BOP reports that at North Lake CI, a facility with an inmate population of 1,625, there have been 2 inmate deaths from COVID-19, 123 inmates have recovered, and currently no inmates have tested positive at the institution. www.bop.gov/locations/ci/nlk/; https://www.bop.gov/coronavirus (last visited May 26, 2021). Considering the number of inmates housed there, these statistics suggest that the North Lake facility has been able to substantially control the spread of COVID-19. Defendant has not shown that his Hispanic ethnicity and medical conditions, considered in combination with the dangers posed by COVID-19, constitute an extraordinary reason warranting his early release.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offense in this case was serious. Defendant was found in the United States on November 24, 2018, after being convicted of the offense of conspiracy to transport and harbor illegal aliens for profit in 2008. As the warden noted in his denial of defendant's request for compassionate release, this offense showed a disregard for public safety and the community. Doc. 36, p. 37. The court already showed some leniency by sentencing defendant to a term of imprisonment of 48 months, near the bottom of the guideline range of 46-57 months. He will go into ICE custody and be deported after serving his sentence.

As to the history and characteristics of the defendant, the PSR indicates that defendant was raised in poverty in Mexico. Both parents worked and provided for basic needs, and there was no alcohol or drug abuse in the home. Defendant left school at age 12 to work. He is married with one child. He has a past history of

alcohol, crack cocaine, and methamphetamine abuse. There is no indication that defendant has had any drug counseling while incarcerated. At the institution, he incurred one disciplinary charge for stealing on September 29, 2020. Doc. 36, p. 41. The warden described defendant's adjustment at the institution as average. Doc. 36, p. 37. Defendant has worked in food service, has taken two courses, and is enrolled in a GED class. Doc. 36, pp. 41-42.

Defendant's prior record is troubling. At the time of his conviction for the offense in this case, defendant was in Criminal History Category IV. The PSR indicated that from February 11, 1999, to May 27, 2002, defendant was arrested by the United States Boarder Patrol and returned to Mexico 12 times. On March 11, 2003, he was convicted in a United States district court in Arizona for transporting illegal aliens, was sentenced to 10 months of incarceration and was removed after serving his sentence. Defendant's supervised release in that case was later revoked after he returned to the United States, and a sentence of 4 months incarceration was imposed. On July 17, 2004, defendant was again convicted of transporting illegal aliens. He was sentenced to a term of incarceration of 40 months and was removed. His term of supervised release was later revoked, resulting in an additional term of incarceration of 10 months. On November 9, 2008, defendant was convicted of conspiracy to transport and harbor illegal aliens for profit, and a term of incarceration of 36 months was imposed. Upon his release, he was removed from the United States. On November 24, 2018, defendant was convicted of falsification after providing false identification information during a traffic stop. On November 26, 2018, he was convicted of the offense of no

driver's license.

Defendant has not only engaged in a steady pattern of repeated illegal re-entries himself. He has also transported illegal aliens, conduct which exposes the aliens being transported, boarder patrol agents, and the residents of this country to a risk of physical and economic harm. It is obvious that the terms of incarceration imposed in his previous cases have not been sufficient to deter him from illegally returning to the United States. Defendant's record indicates that his risk of recidivism is high. The goals of deterrence strongly weigh against a reduced sentence in this case.

Defendant was arrested on December 21, 2018, and has served a little over 29 months of his sentence of incarceration of 48 months. By his projected release date of June 11, 2022, he will have served approximately 41-1/2 months. The reduced sentence of 29 months sought by defendant would not be sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. In light of defendant's propensity to illegally re-enter the United States even after serving comparable sentences, the time he has served to date is not sufficient to protect the public from more crimes by the defendant. The court further concludes that the fact that the defendant will go into ICE custody following his release does not warrant a reduction in sentence. There is no evidence of the exact amount of time it will take to accomplish defendant's removal, but in light of the number of times defendant has been removed in the past, his removal may proceed quickly. The fact that defendant will be in ICE custody for an uncertain period of time does not warrant reducing the term of incarceration in this case.

The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming, <u>arguendo</u>, that all of the circumstances discussed above, including defendant's medical conditions and the COVID-19 pandemic, when considered together, are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.

## IV. Conclusion

In accordance with the foregoing, defendant's motions for a reduced sentence (Docs. 36 and 44) are denied.

Date:  June 3, 2021            <u>    s/James L. Graham    </u>
                                                   James L. Graham
                                                   United States District Judge